IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| ANTHONY WILLIAMS | : | NO. 11-223-1 |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                                                   NOVEMBER 19, 2012

**Introduction**

Anthony Williams and 15 others were charged on April 12, 2011 with conspiracy, access device fraud, identity theft, aggravated identity theft, and bank fraud, in violation of 18 U.S.C. §§371, 1028 (a)(7), 1028A, 1029 (a)(2) and 1344.[1] All 22 counts in the indictment implicate Mr. Williams. The indictment described Mr. Williams as the prime actor among the conspirators, outlining his criminal conduct as involving his successful efforts in gaining access to the victims' bank and credit accounts, typically by telephone, and using stolen identity information in a host of disparate transactions and circumstances.

Mr. Williams is scheduled to go to trial, in anticipation of which he filed a number of motions, namely:

- Motion to Dismiss Indictment
- Motion to Compel Disclosure of Pre-Sentence Investigation report of Co-Defendants Testifying Against Defendant

---

[1] Initially, the indictment was under seal. It was unsealed on April 18, 2011.

- Motion to Compel Disclosure of Existence of Promises of Immunity, Leniency or Preferential Treatment
- Motion to Bar Impeachment Use of Defendant's Prior Convictions
- Motion for Order on Government to Give Timely Written Notice of Intention to Present 404(b) Evidence
- Motion for Production of Law Enforcement Interview Reports or Notes with Individuals Who Will Not Be Witnesses at Trial
- Motion for Early Disclosure of Material under 18 USC 3500 (b)

With the exception of the Motion to Dismiss Indictment, the motions were addressed, discussed and substantively resolved at the hearing conducted on October 11, 2012, with counsel and Mr. Williams present. See Trans. 10/11/12 at 6-13. The results of the Court's and the parties' consideration of those motions is reconfirmed in the Order that accompanies this Memorandum. Many of the arguments attendant to the Motion to Dismiss Indictment also were addressed on October 11, 2012 and are resolved below.

**Factual Background Pertinent to Motion to Dismiss Indictment**

At the time of the issuance of the 22-count indictment, Mr. Williams was in New Jersey state custody in connection with unrelated criminal matters. Consequently, a federal bench warrant was issued for Mr. Williams and orders for the New Jersey authorities to produce Mr. Williams (and a number of his co-defendants) to the U.S. Marshal for this District were entered on April 26 and 27, 2011, respectively (Doc. Nos. 26 and 30). Consequently Mr. Williams was transported from New Jersey custodial facilities to the Eastern District of Pennsylvania, and he made his initial appearance in this case on May 17, 2011. He pled not guilty as to all 22 counts. Counsel (namely, Robert Kerry Kalmbach, Esq.) entered his appearance on that date for Mr. Williams. Meanwhile, bench warrants had issued simultaneously as to others of the co-defendants, two of whom (Wayne Rainey and Alphonzo Richardson) remain as fugitives to this very day.

At the May 17, 2011 initial appearance all counsel were informed that, in keeping with customary procedures, they had 14 days to file any pre-trial motions. After the arraignment, Mr. Williams was returned to the custody of the New Jersey authorities where he was awaiting disposition of pending charges. On May 31, 2011 Mr. Williams's counsel in this case filed a Motion for Extension of Time to File Pre-Trial Motions (Doc. No. 93). At the same time, on Mr. Williams's behalf, counsel also filed a Motion to Join Motions of Co-Defendants (Doc. No. 94). Given the apparently extensive nature of the case and the shifting coalescence of the dynamics between and among various factions of the 16 defendants, the Court ordered all counsel to attend a scheduling conference set for June 29, 2011. A scheduling order (Doc. No. 114) emanated from that conference setting a special listing trial date of November 14, 2011 and requiring pre-trial activities to proceed according to a delineated schedule. On July 13, 2011 the Court granted Mr. Williams's pending motion to join in such motions as may be made by his co-defendants. (Doc. No. 116).

The Government filed a Motion for Protective Order as to all 16 defendants (Doc. No. 117) on July 22, 2011, seeking various constraints on the use and sharing of information concerning certain witnesses. The Defendants were directed to file any objections or oppositions to that Motion by August 10, 2011. Thereafter, on August 19, 2011, the Government filed a Motion to Authenticate Audio Recordings (Doc. No. 122). The requested protective order (with certain exceptions) was authorized on August 23, 2011 (Doc. No. 123), and the motion concerning the audio recordings was granted on September 23, 2011 (Doc. No. 141).

On November 3, 2011 counsel on behalf of Mr. Williams filed a Motion to Continue Trial Date (Doc. No. 164), and the next day counsel for Mr. Williams's co-defendant Timeeka Loud also filed a Motion to Continue Trial (Doc. No. 165). Both of these continuance motions

3

expressly referenced on-going discussions for potential non-trial dispositions for each of the two defendants. The Government did not oppose either motion, and the Court's Deputy entered an order (Doc. No. 169) documenting the exclusion from computation of the time for the case overall during the pendency of the continuance motions "until such time that a hearing on the motions is concluded or other prompt disposition is made."

As a procedural matter, the docket next confirms that on January 27, 2012 this Court issued orders to provide for Mr. Williams to be brought to this Court for a March 7, 2012 hearing from the confines where he was awaiting various criminal case dispositions in New Jersey. A similar order dated January 27, 2012 directed Montgomery County (Pa.) corrections officials to temporarily release Mr. Williams's co-defendant Timeeka Loud for the scheduled March 7, 2012 hearing in this Court. A status hearing was indeed held, and a May 16, 2012 trial date for this case was set. At this point, Ms. Loud embarked on a different dispositional course, and she entered a guilty plea to the charges on March 14, 2012. She now awaits sentencing after Mr. Williams's trial.

Following Ms. Loud's entry of her guilty plea, Mr. Williams filed a pro se motion to dismiss this case on April 23, 2012 which he supplemented two days later. In keeping with the Court's customary procedures with pro se motions submitted by criminal case defendants who have counsel of record, Mr. Williams's motion was denied without prejudice to it being re-filed by his defense counsel if counsel deems such a motion appropriate after consultation. A week later, the Court issued a notice for a pre-trial conference for purposes of discussing details for the upcoming May 16th trial.

However, on May 1, 2012 Mr. Williams filed another pro se motion, this one to dismiss his court-appointed counsel. Accordingly, instead of completing trial plans, the Court addressed

Mr. Williams's latest motion at a hearing on May 8, 2012. Defense counsel (Mr. Kalmbach) informed the Court that he and Mr. Williams had fundamental differences that could not be resolved or reconciled. Mr. Williams unequivocally agreed with that assessment, emphasizing that he wanted Mr. Kalmbach discharged as his counsel even though it would mean delaying and rescheduling the trial to the fall. The Court directly informed Mr. Williams that if his demand for new counsel was accepted, his trial could not occur until later, most likely "at Thanksgiving." Trans. 5/8/12 at 11. Under oath Mr. Williams acknowledged several times in response to the Court's queries that he understood and accepted such consequences to his various motions and demands for new counsel. Indeed, after a lengthy colloquy, and still under oath, Mr. Williams waived his rights to proceed to trial before the late fall 2012 and stated that he understood the ramifications of his choices. Trans. 5/8/12 at 19-20. As a result, Mr. Kalmbach was allowed to withdraw as Mr. Williams's defense counsel. New counsel, Peter Levin, was appointed. After consultation with all counsel, the Court entered an order on May 16, 2012 calling for the special listing of this case for trial to commence on November 27, 2012. This remains the date for Mr. Williams's trial.

Presumably endeavoring to ready himself for trial, Mr. Williams's new counsel, Mr. Levin, filed a motion on June 26, 2012 for a further extension of time to file pre-trial motions for Mr. Williams. In response, the Court issued another order extending further the time for Mr. Williams to file pre-trial motions up to August 8, 2012. The defense motions listed <u>supra</u> at the beginning of this Memorandum were filed July 27, 2012. The Government's omnibus response was filed on August 17, 2012, to which defense counsel filed a reply on September 13, 2012. Once again, though, while this briefing was underway, on September 11, 2012, Mr. Williams veered off onto a different path and filed another <u>pro</u> <u>se</u> motion to discharge his new counsel who

5

had been appointed four months earlier and requesting to secure yet another new counsel. The Court scheduled a hearing to address all of Mr. Williams's then extant motions. Mr. Williams responded with another pro se motion, one for "evidentiary hearings." On October 11, 2012 a hearing was held, attended by the defendant and all interested counsel, to consider the motions.

This Memorandum addresses primarily the defense motion to dismiss the indictment. All of the other defense motions, including the most recent one for "evidentiary hearings" were addressed at the October 11, 2012 hearing. As documented on the record of the hearing and confirmed in the accompanying Order, Mr. Williams's pro se motion for "evidentiary hearings" was denied[2], and the various counseled motions for discovery or trial issues also were denied, these latter primarily based upon the Government's representations on the record of the hearing that various discoverable material and information either already has been produced or will timely be provided to the defense or no triggering issue would arise at trial. To date, the Court has not been informed of any failure of the Government to honor those undertakings or of any change in circumstances.

**Discussion**

Mr. Williams raises, both by himself and through the services of counsel, a number of arguments for dismissal of the indictment.

First in line is the repeated criticism by Mr. Williams of his prior counsel (Mr. Kalmbach) for allegedly failing to visit with Mr. Williams between May 17 and October 2011. This, claims Mr. Williams, constituted a "denial of counsel" and led to a number of undesirable

---

[2] As the transcript of the October 11, 2012 hearing reflects, outside of the presence of the Government, the Court allowed Mr. Williams to revisit his litany of complaints about his initial attorney, tried to understand Mr. Williams's view as to what "evidentiary hearings" he was seeking and for what purpose and explained in detail why no hearing as Mr. Williams seemed to hope for would be authorized, given that no evidentiary issue or dispute was proposed and none needed to be resolved.

circumstances, to wit, failure to secure testimony from supposedly favorable witnesses, loss of the opportunity to file pre-trial motions, failure to oppose the Government's motion for a protective order, failure to communicate a proposed plea and loss of the opportunity for a transfer to federal custody prior to his August 5, 2011 state jurisdiction sentencing in New Jersey.

Quite apart from the over-inflated, if not fully erroneous, assertions of harm[3], this list of supposed harms does not serve to support dismissal of an indictment. If Mr. Williams is convicted, he then would have the opportunity to try to pursue these arguments as and to the extent permitted by Strickland v. Washington, 466 U.S. 668 (1984). Until then there is no way to evaluate whether there has been any adverse consequences flowing from the alleged shortcomings of counsel. No authority would permit Mr. Williams to short circuit the proper sequence of procedures or make these arguments prematurely.

Mr. Williams also hopes to dismiss the indictment because, he claims, his previous lawyer had a "conflict of interest," apparently arising from counsel having sought a continuance of trial without Mr. Williams's permission and from counsel having urged Mr. Williams to seriously consider the practical ramifications of the array of evidence against him. This argument is not availing as a reason to dismiss the indictment. Indeed, this case is a good example of why, in the exercise of professional judgment, counsel does not always need his client's express permission or authorization to seek a continuance of trial. United States v.

---

[3] For example, contrary to his claim that due to his counsel's alleged derelictions he lost the opportunity to make pre-trial motions, Mr. Williams by no means lost the opportunity to submit pre-trial motions. As recently as July 5, 2012, the Court formally again extended such opportunities to Mr. Williams. In any case, as the factual recitation in this Memorandum should make obvious and the docket will document, Mr. Williams has been undaunted in making pre-trial filings, with or without counsel, and with or without scheduling issues. Virtually all of his complaints pale in comparison to the actual circumstances of his case.

Stradford, 394 Fed. Appx. 923, 926 (3d Cir. 2010). For example, as is obvious here, counsel and client may have contrary perspectives on the status and strategy of a case. Thus a client's unfettered veto power over counsel's considered judgment to seek a continuance perhaps to allow for time for counsel to iron out any number of misunderstandings, to attend to some matter of actual importance for the client's benefit, to assess the consequences of changed circumstances caused by co-defendants' course of action changes, or to adequately prepare for trial would mean that the client could unreasonably interfere with counsel's duty and ethical obligations to exercise independent professional judgment. While the lawyer remains obliged to have an explanation for following a course contrary to his client's stated wishes or against the client's most obvious interests, the lawyer's ethical duties are more complicated and nuanced than to merely state that the lawyer must always be merely the robotic deliverer of the client's message - - particularly when the client's single-minded view of the procedural or substantive posture of a case may obscure or overlook other important matters. Mr. Williams's express consent is not a prerequisite to a valid continuance under the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq., which allows for a continuance request "by any judge … *or* at the request of the defendant *or* his counsel …" 18 U.S.C. § 3161(h)(7)(A) (emphasis added). The Court perceives no "conflict of interest" to support dismissal because of the continuance request.

Mr. Williams also argues for dismissal of the indictment because one of his earlier demands to discharge his lawyer and to be assigned a new one was not immediately granted. It is accurate to say that the Court did not accept automatically Mr. Williams's assertions, electing, instead, to encourage counsel and client to try to overcome the difficulty in their relationship. However, a two month cooling off period that did not ultimately prove successful in terms of salvaging the relationship provides no recognized basis for dismissing the indictment against Mr.

Williams.[4] After it became clear that Mr. Williams and his then attorney could not work productively together, his request for a new lawyer - - as well as the soon-to-follow and fully expected motion by that new counsel for a continuance of the trial date - - was granted.

Next, Mr. Williams tries to fashion an attack on the indictment because of an alleged violation by the Government of the Interstate Agreement on Detainers Act. This statute outlines procedures between and among the various states and federal government for addressing multiple charges pending against a defendant. The Detainers Act provides, for example, that a prisoner who has been sentenced in one state and is subject to a detainer lodged due to charges pending in another state has certain rights, including a right to remain in the custody of the requesting jurisdiction until the time of trial. Mr. Williams, for his part, claims that the Detainers Act was violated because the federal government returned Mr. Williams to New Jersey authorities following the May 17, 2011 federal arraignment and initial appearance. In May of 2011 Mr. Williams was awaiting trial on New Jersey charges. On June 2, 2011 Mr. Williams pled guilty to those New Jersey charges. His sentencing on them occurred two months later, on August 5, 2011. As a result, given that Mr. Williams had not yet actually been sentenced for the New Jersey matter when he was returned by the federal authorities to New Jersey in mid-May 2011, by its own terms the Detainers Act did not then apply to Mr. Williams. Consequently, he cannot argue that he ought to have been allowed to stay here in the Eastern District of Pennsylvania rather than be returned to New Jersey. See United States v. Muniz, 1 F.3d 1018, 1025 (10th Cir. 1993); United States v. Currier, 836 F.2d 11, 16 (1st Cir. 1987). Because there

---

[4] The Government correctly distinguishes from this case the solitary opinion, United States v. Welty, 674 F.2d 185(3d Cir. 1982), that Mr. Williams cites as authority for his argument on this point.

has been no violation of the Detainers Act as claimed by Mr. Williams, this does not serve as any ground for dismissing the indictment.

Mr. Williams's final, 2-pronged attack on the indictment is tied to an arguably disingenuous invocation of Speedy Trial Act claims, on both statutory and constitutional grounds. He claims a violation of the Speedy Trial Act, 18 U.S.C. §§ 3161, et seq., as well as a violation of his constitutional right to a speedy trial. Given that the only continuances requested in this case were defense motions (two on behalf of Mr. Williams and one by a co-defendant in whose motions Mr. Williams had been allowed to join), one might see Mr. Williams's Speedy Trial attack to be a disingenuous attempt to "sandbag" the Government or the Court. That kind of "opportunistic behavior" is typically given short judicial shrift. See, e.g., United States v. Larson, 417 F.3d 741, 746 (7th Cir. 2005); United States v. Baskin-Bey, 45 F. 3d 200, 204 (7th Cir. 1995); United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994); United States v. Willis, 958 F.2d 60, 63 (5th Cir. 1992). Even if Mr. Williams's efforts merit such direct criticism, the Court will accept his argument as having been made in good faith for purposes of analyzing and disposing of it. In any case, Mr. Williams's approaches are neither accurate nor availing.

First Mr. Williams finds fault with what he necessarily claims is the granting of the trial continuance motion on March 7, 2012. That motion, filed on November 3, 2011,[5] prompted the setting of the March 7 hearing. Before the continuance motion could even be addressed, Mr. Williams brought to the Court's attention his then-pending motion to discharge counsel. As documented above and confirmed on the docket, Mr. Williams pro se motion was denied at that time, trial was continued to May 16, but no continuance order was issued. Two months later, at a

---

[5] Time for the pendency of any pre-trial motions is excludable from timing calculations for speedy trial purposes. United States v. Felton, 811 F.2d 190, 195-196 (3d Cir. 1987)(en banc); United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993).

status hearing attended by the defendant the motion for replacement counsel was granted and another trial date was set - - this one for November 27, 2012.

While the time for the commencement of the calculation of the setting of a trial date for 70 days hence is the later of a public issuance of an indictment or information or a defendant's initial appearance, 18 U.S.C. § 3161(c)(1), a myriad of reasons can toll the running of the "speedy trial clock." Many of those reasons are at play here in Mr. Williams's case to overcome his statutory arguments. Delays prompted by continuances granted <u>sua sponte</u> or in response to a motion are excludable, 18 U.S.C. § 3161(h)(7)(A).[6] The speedy trial date has been delayed here while awaiting resolution of Mr. Williams's unsevered co-defendant's (Timeeka Loud)[7] trial or other disposition. <u>See</u> 18 U.S.C. § 3161(h)(6). Mr. Williams's trial has been delayed by statute while two of his unserved co-defendants, Wayne Rainey and Alphonzo Richardson, have remained fugitives and, hence, "absent" and "unavailable." 18 U.S.C. § 3161(h)(3)(A). The period of time(s) when Mr. Williams was in New Jersey awaiting resolution of New Jersey state charges is likewise a recognized cause for delaying his trial. 18 U.S.C. §3161 (h)(1). And, of course, several tolling periods resulted from submissions of Mr. Williams's other numerous motions. 18 U.S.C. § 3161(h)(1)(H). The Supreme Court has appreciated that the vagaries of a given case may impede the prompt resolution of motions or other issues that can and do amount

---

[6] This provision calls upon the Court to articulate the balancing of the specific factors that cause the Court to conclude that the ends of justice are served by continuing the trial date beyond the so-called "speedy trial" date. <u>Zedner v. United States,</u> 547 U.S. 489, 507 (2006). In the Order accompanying this Memorandum, the Court summarizes the various reasons that appeared on the records of the many hearings in this case when the demands of justice were balanced to continue Mr. Williams's trial.

[7] Ms. Loud sought and received a continuance of the trial by way of her motion for continuance filed on November 4, 2011 (and presumably joined in by Mr. Williams by virtue of his cover-all May 31, 2011 motion to join the motions of his co-defendants) which was operable at least until her guilty plea of March 14, 2012.

to properly excludable time from the speedy trial date. Henderson v. United States, 476 U.S. 321, 326, 331 (1986). The Speedy Trial Act itself permits the presiding judge to initiate a continuance of the trial date. 18 U.S.C. § 3161(h)(7)(A).

At various times during the pendency of this case, the following considerations have been operative to merit the Court's continuance(s) of the trial date for Mr. Williams:

- The representation of counsel of the possibility of - - and the need to evaluate - - a non-trial disposition of the charges against Mr. Williams
- The need for counsel (two counsel, to be accurate) to prepare fully for trial
- The consequences of Mr. Williams's multiple demands to discharge counsel and be assigned new counsel
- The decision of co-defendant Loud to plead guilty and the potential impact of that development on Mr. Williams's position
- The timing of the production of various discovery materials and the need for evaluation of them
- The fugitive status of two of the 16 defendants in this case
- The necessary and natural complications arising from a 16-defendant, 22-count indictment
- The two defense requests for additional time to file pre-trial defense motions

Under the circumstances summarized above (many of which were directly brought about by Mr. Williams himself and others by his lawyers exercising conventional defense tactics, processes and procedures), Mr. Williams's attempt to invoke the Speedy Trial Act is, at best, ironic. In any case, it is unsuccessful.

For similar reasons, the Court concludes that Mr. Williams's constitutional right to a speedy trial has not been violated.

This conclusion arises from the consideration of the test set forth in Barker v. Wingo, 407 U.S. 514 (1972), as further applied by the Third Circuit Court of Appeals in, e.g., United States v. Battis, 589 F.3d 673 (3d Cir 2009); United States v. Dent, 149 F.3d 180 (3d Cir. 1998); and Hakeem v. Beyer, 990 F.2d 750 (3d Cir. 1993). Under the Wingo factors, the Court concludes

that the delay here can be considered to be, at most, 12 months and then virtually all at the request of one or the other of Mr. Williams's lawyers (and, for good measure, his co-defendant in whose motions he indiscriminately, but affirmatively, joined).  In this case, the Government has not sought (nor opposed) any continuance.  Although now Mr. Williams claims to have disputed with his first counsel the request for a continuance as discussed above, he points to no contemporaneous evidence to support that claim.  The circumstances then extant would seem to undermine finding any compelling reasons would have supported such a disagreement.  Furthermore, again as already addressed, even accepting that there was a documented disagreement, that does not unlock the pre-trial detention door.  Finally, there is nothing presented to the Court to suggest that Mr. Williams has experienced any prejudice, harm, oppression, anxiety, stress or the like (all of which he suggests is at play) because of any timing of his trial.  He has, in short, been deprived of no constitutional rights.

Accordingly, the Motion to Dismiss Indictment is denied.  An Order consistent with this Memorandum accompanies it.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge