IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANTHONY WILLIAMS | : | NO. 11-223-1 |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                                                                          **NOVEMBER 21, 2012**

**Introduction**

In April of 2011 Anthony Williams, along with 15 co-defendants, was named in a 22-count indictment charging him and the others with conspiracy, identity theft, aggravated identity theft, use of one or more access devices, and bank fraud, and aiding and abetting.  Mr. Williams is named in all of the counts which cover alleged activities occurring between April 2007 and August 2010 (with the decided majority of the illegal transactions allegedly occurring in 2009).  The charges appear to make reference to more than 40 transactions on approximately that number of accounts held by almost that many innocent account holders with approximately a dozen different credit card issuers or financial institutions.

Certainly without stating that it is not important to be accurate in the first instance, the Court observes that the indictment sets out a great number of repetitive, seemingly similar, detail-oriented transactions undertaken by the defendants in similar fashions, and it is not surprising that upon review in the throes of final trial preparation certain credit card issuer names, account numbers transpositions or account-holder identifying initial slip-ups are discovered and hoped to be rectified.

Here, two weeks before the anticipated start of this trial the Government filed a motion

asking the Court to exercise its discretion to permit five corrections (the Government calls them "technical amendments") to the indictment appearing in four of the counts:[1]

1. In Count Four, the Motion asks to substitute the initials of the victimized accountholder from "R.K." to "P.M.," while keeping the transaction dates, credit card issuer, account number and charged defendants unchanged

2. In Count Twelve, the Motion asks to substitute the name of the credit card issuer from "Citibank" to "Discover ," while keeping the transaction date, account number, victimized accountholder, and defendants unchanged

3. In Count Thirteen, the Motion seeks to correct the account number from "6246" to "6296," while keeping the name of the credit card issuer the same, the initials of the victimized accountholder the same, the transaction date the same and the defendants the same

4. In Count Fifteen, a lengthy 17-paragraph count, the Motion seeks to add a second account number, namely "9610," to the segments of the Count covering paragraphs 15 and 16, while keeping the initials of the victimized accountholder, transaction dates, banks and named defendants unchanged.

None of the proposed corrections or amendments changes in any way the statutes invoked to charge Mr. Williams or any of the co-defendants with crimes. Likewise, there is no proposed change in terms of how the crimes supposedly occurred.

Although Mr. Williams opposes the Motion, he does so only by asserting in conclusory fashion that the proposed changes are "substantive" or "material" and that he "would be prejudiced by any changes amending the Indictment." Nowhere in the opposition submission does Mr.

---

[1] The Government listed in its Motion papers the text of the proposed amendments, but the Court would have appreciated the inclusion in the Motion of a comparison of the "before and after" text of the Counts at issue to make the analysis of the merits of the competing arguments more efficient and expeditious.

Williams set forth with any specificity or detail how he would be prejudiced either by the text of the proposed correction or the timing - - two weeks before trial - - of the request. While Mr. Williams calls upon familiar "black letter" language that the functions of an indictment are to apprise a defendant of the charges of which he is accused so he can prepare his defense and to provide protection against re-prosecution following an acquittal, nowhere does Mr. Williams suggest how he has been hoodwinked or misled in the preparation of his defense by the original text of the indictment as compared to the proposal or how he conceivably could be without double jeopardy protection in this circumstance.

The Supreme Court and the Court of Appeals for the Third Circuit have held that although it is impermissible for district courts to make material or substantial amendments to an indictment without resubmission of the indictment to the grand jury, they may make amendments "concerning matters of form." *Russell v. United States*, 369 U.S. 749, 770 (1962); *United States v. Goldstein*, 502 F.2d 526, 528 (3d Cir. 1974). "An amendment of form and not of substance occurs when the defendant is not misled in any sense, is not subjected to any added burden, and is not otherwise prejudiced." *United States v. Kegler*, 724 F.2d 190, 194 (D.C. Cir. 1983) (*citing Williams v. United States*, 179 F.2d 656, 659 (5th Cir. 1950)). This principle has been applied on numerous occasions to allow district courts to make amendments as to matters of form during the course of a trial, and even after the beginning of jury deliberations, let alone two weeks before trial starts, as is the case here.[2]

---

[2] *See, e.g., United States v. Miller*, 116 F.3d 641, 669-671 (2d Cir. 1997) (correction of merely technical errors, such as clerical or typographical mistakes, is allowed during trial where such correction does not alter "essential substance" of charging terms); *United States v. Neil,* 166 F.3d 943, 947-948 (9th Cir. 1999) (district court did not err in granting a motion to amend the indictment, during jury deliberations, where one bank robbery count referred to the wrong bank); *United States v. Lim*, 984 F.2d 331, 337 (9th Cir. 1993) (district court did not err in amending typo in statute citation); *Kegler*, 724 F.2d at 193-194 (district court did not err in amending the indictment, during trial, to correct the name of payee on a check); *United States v. McGrath*, 558 F.2d 1102, 1105 (2d Cir. 1977) (district court would have been empowered, during trial, to amend the indictment to correct certain references to the Long Island State Parks Commission as the "Long Island State Parks and Recreation Commission").

3

In this case, the corrections cannot be characterized as creating a prejudice against Mr. Williams.[3] The focal points of the Counts were "sufficiently clear to enable [Mr. Williams] to prepare [his] defense." *United States v. Coleman*, 656 F.2d 509 (9th Cir. 1981). Certainly, Mr. Williams has not explained how he supposedly has been hampered. Moreover, Mr. Williams does not distinguish among or between the proposed amendments but rather challenges them all with the same indiscriminate catch-all criticisms, a technique that calls into question the efficacy of his arguments overall. Faced with the proposed changes, Mr. Williams nowhere offers the most logical curative response, namely, to ask for additional time to prepare his defense to the "new" or "different" charges that are supposedly conjured up by the requested amendments, thus also prompting the Court's skepticism as to the *bona fides* of his objections.

Therefore, for the foregoing reasons the Government's Motion to Amend Indictment will be granted and an order to that effect accompanies this Memorandum.

BY THE COURT:

  /s/  Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[3] In this context, it is at least worth noting that Mr. Williams's Indictment was returned in April of 2011, and Mr. Williams raised no questions or objections to the language until now. The Court understands that the Government has complied fully with its discovery disclosure obligations so that Mr. Williams has had available for some time before receiving the Motion the paperwork that contains the very specifics that the Government now seeks to use to correct the referenced technicalities.